UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

JOHN BARRY LYNCH and
BARBARA J. LYNCH,

        Plaintiffs,

  v.

RKS MORTGAGE INC., a California corporation, RECONTRUST COMPANY; HORIZON DIRECT INC., a California corporation; MASTER FINANCIAL, INC., a California corporation; COMMITMENT LENDING; COUNTRYWIDE HOME LOANS, INC., a California corporation; MORTGAGE ELECTRONIC REGISTRATION SYSTEM, INC., a California corporation; JEFFREY BLOOM, an individual,

        Defendants.

No. 2:08-cv-01513-MCE-KJM

**MEMORANDUM AND ORDER**

----oo0oo----

Through this lawsuit, Plaintiffs John Barry Lynch and Barbara J. Lynch ("Plaintiffs") seek to forestall the non-judicial foreclosure on their home by arguing that the mortgage taken out to fund purchase of the residence violated the provisions of the Truth in Lending Act, 15 U.S.C. §§ 1601, et seq. ("TILA") and the Home Ownership and Equity Protection Act, 15 U.S.C. § 1639 ("HOEPA").

1

Plaintiffs' mortgage was assigned to Defendant Countryside Home, Loans, Inc. ("Countryside") by the initial lender, Defendant Commitment Lending, after Defendant RKS Mortgage, Inc. brokered the loan and Defendant Horizon Direct provided funding for the loan. Countryside instituted foreclosure proceedings, pursuant to both the terms of the loan and applicable provisions of California law, after Plaintiffs fell behind on monthly payments. Countryside and its foreclosure agent, ReconTrust (collectively referred to as "Moving Defendants" unless otherwise noted), now move for summary judgment with respect to Plaintiffs' claims on grounds that they fail to state a claim upon which relief can be granted under Rule 12(b)(6) of the Federal Rules of Civil Procedure.[1]

As set forth below, Moving Defendants' Motion will be granted.

**BACKGROUND**

According to Plaintiffs' Complaint, they entered into a mortgage loan agreement with Defendants RKS Mortgage, Inc. and Commitment Lending that is currently being serviced by Countrywide. As exhibits to their Complaint, Plaintiffs attach both an email from Defendant Jeffrey Bloom at RKS Mortgage, dated November 16, 2006, and two different Truth-In-Lending Disclosure Statements, dated December 19, 2006 and January 22, 2007, respectively.

---

[1] All further references to "Rule" or "Rules" are to the Federal Rules of Civil Procedure unless noted otherwise.

2

The two Disclosure Statements are for two separate loan proposals. The December 2006 Statement contemplates a financed amount of $764,092.58 to be repaid over a 480-month, or 40-year, period. The January 2007 Disclosure, on the other hand, provides for a 40-year amortization at a different interest rate.

Defendants have requested that this Court take judicial notice of the loan documents generated in connection with the mortgage actually taken out by Plaintiffs, inasmuch as said documents are repeatedly referred to in the body of Plaintiffs' Complaint.[2] Those documents indicate that while the adjustable rate loan issued to Plaintiffs was ostensibly for a period of 30 years, for purposes of calculating the monthly payments a period of 40 years was used, with a balloon payment due at the end of 30 years. Significantly, the TILA Disclosure included within the loan documents was the second January 22, 2007 Disclosure attached by Plaintiffs as an exhibit to their Complaint.

///
///

---

[2] Defendants' request in that regard is unopposed and will consequently be granted. In Branch v. Tunnell, 14 F.3d 449, 454 (9th Cir. 2004), the Ninth Circuit found that documents not physically attached to a Complaint can nonetheless be considered in ruling on a Rule 12(b)(6) motion if the complaint refers to such documents, the documents are central to the plaintiff's claims, and there is no question regarding the authenticity of the documents. In this case, the mortgage documents provided by Defendants have been referenced throughout Plaintiffs' Complaint. (See Pls.' Compl., ¶¶ 26, 37, 38, 40, 42, 51) and are unquestionably central to Plaintiffs' Complaint which is based on alleged irregularities and discrepancies in the home loan transaction. Moreover, Plaintiffs do not question the authenticity of the documents. Significantly, the Court's consideration of the mortgage documents proffered by Defendants does not convert this Rule 12(b)(6) motion to a motion for summary judgment. Branch, 14 F.3d at 454.

In addition, Plaintiffs' counsel conceded at oral argument that the loan actually issued to his clients was consistent with the second proposal as evidenced by the January 2007 Disclosure.

The loan documents also establish that Plaintiffs' mortgage was funded on February 6, 2007 after the loan was formally consummated on by execution of the parties, on January 24, 2007 by Mr. Lynch and on January 25, 2007 by Mrs. Lynch.  Moreover, at the time Plaintiffs signed the loan documents they further evidenced receipt of form entitled "Notice of Right to Cancel" which clearly provided that in order to cancel the transaction they had to send the Notice back not later than three (3) days following their execution of the loan documents.

Despite the fact that Plaintiffs acknowledged receipt of the Truth-in-Lending Disclosure just two days before they signed the loan documents, they nonetheless claim to have been confused by the differences between the earlier December 2006 and the loan they ultimately selected following receipt of the second January 2007 Disclosure.  That alleged confusion is the cornerstone of the claims Plaintiffs now make by way of this litigation.

**STANDARD**

On a motion to dismiss for failure to state a claim under Rule 12(b)(6), all allegations of material fact must be accepted as true and construed in the light most favorable to the nonmoving party.  <u>Cahill v. Liberty Mut. Ins. Co.</u>, 80 F.3d 336, 337-38 (9th Cir. 1996).

///

4

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Conley v. Gibson, 355 U.S. 41, 47, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957).  While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his "entitlement to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.  Bell Atl. Corp. v. Twombly, 127 S.Ct. 1955, 1964-65 (2007) (internal citations and quotations omitted).  Factual allegations must be enough to raise a right to relief above the speculative level.  Id. at 1965 (citing 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-236 (3d ed. 2004) ("The pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action").

If the court grants a motion to dismiss a complaint, it must then decide whether to grant leave to amend.  The court should "freely give[]" leave to amend when there is no "undue delay, bad faith[,] dilatory motive on the part of the movant, . . . undue prejudice to the opposing party by virtue of . . . the amendment, [or] futility of the amendment. . . ."  Fed. R. Civ. P. 15(a); Foman v. Davis, 371 U.S. 178, 182 (1962).  Generally, leave to amend is only denied when it is clear that the deficiencies of the complaint cannot be cured by amendment.  DeSoto v. Yellow Freight Sys., Inc., 957 F.2d 655, 658 (9th Cir. 1992).

5

**ANALYSIS**

**A.   TILA Violation**

In their First Cause of Action, Plaintiffs seek damages under TILA for the alleged failure to provide consistent loan disclosures and for failing to rescind their loan upon demand. The purpose of TILA is "to assure meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him..."  15 U.S.C. § 1601.

Plaintiffs' argument that Moving Defendants violated TILA fails as a matter of law.  First and most importantly, Plaintiffs' papers, as well as their counsel's concession at oral argument, make it clear that their alleged TILA violation hinges on the claim that the December 2006 and January 2007 Disclosures are confusing and unclear to the point of "making it impossible for the average consumer to understand the actual terms of his/her loan agreement."  Pls.' Opp., 6:21-26.  The Court finds this contention to be utterly unpersuasive.

The December 2006 and January 2007 Disclosures obviously pertain to different loan proposals.  As indicated above, the December 19, 2006 Disclosure on its face describes a loan payable over a period of 40 years, while the January 2007 Disclosure describes a loan to be repaid over a 30-year period followed by a balloon Payment of $583,502.00 due on February 1, 2037.  The Disclosures reflect different amounts financed ($756,770.68 as opposed to $764,092.58) and further reflect substantially different annual percentage interest rates (10.224 v. 12.702 percent, respectively). See Pls. Compl., Exs. "B" and "C".

The finance charges associated with the two loan proposals were also significantly different. Even more importantly, the loan documents pertaining to the loan Plaintiffs ultimately selected make it clear that both Plaintiffs acknowledged receipt of the second, January 22, 2007 Disclosure at the time they signed the loan papers on January 24 and 25, 2007. Written acknowledgment of receipt by Plaintiffs is conclusive proof of the delivery of such disclosure statements. 15 U.S.C. § 1641(b).

Given all these factors, there can be no reasonable dispute that Plaintiffs' loan was in accordance with the second disclosure. There was no misrepresentation, or failure to provide "clear and conspicuous" disclosures, giving rise to a TILA violation. Even Plaintiffs do not allege that the second disclosure was at variance with the terms of their loan.

Accepting Plaintiffs' argument the discrepancy between the two disclosures alone constitutes a TILA violation would in essence prevent a lender from ever offering a different loan proposal, because, according to Plaintiffs, the difference between a subsequent proposal and its predecessor might be deemed "confusing" to the average consumer, therefore running counter to TILA. That conclusion is both illogical and contrary to the applicable law. In In re McNinch, 250 B.R. 848, 853-56 (Bankr. W.D. Pa. 2000), for example, the court rejected plaintiffs' claim that any difference between two disclosures violated TILA, where the second disclosure accurately set forth the terms of the ultimately issued loan. As the McNinch court noted:

///
///

7

> "TILA provides for re-disclosure of early estimates through provisions such as 12 C.F.R. § 226.17(f). Arguably, the goal of TILA "to assure meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him..." is met when the consumer is supplied with disclosure of the correct, significant, terms of the actual loan prior to closing. The second disclosure given to McNinch at closing satisfies that goal and TILA's requirements."

Id. at 856.

As McNinch points out, TILA regulations contemplate a second set of TILA disclosures if events subsequent to the first disclosure make that necessary, and provides specifically that such additional disclosure is not a violation:

> "(e) *Effect of subsequent events*. If a disclosure becomes inaccurate because of an event that occurs after the creditor delivers the required disclosure, the inaccuracy is not a violation of this regulation, although new disclosures may be required under paragraph (f) of this section, § 226.19, or § 226.20.
>
> (f) *Early disclosures*. If disclosure required by this subpart are given before the date of consummation of a transaction and a subsequent event makes them inaccurate, the creditor shall disclose before consummation:
>
> > (1) Any changed term unless the term was based on an estimate in accordance with § 226.17(c)(2) and was labelled an estimate:
> >
> > (2) All changed terms, if the annual percentage rate at the time of consummation varies from the annual percentage rate disclosed earlier by more than 1/8 of 1 percentage point in a regular transaction....

12 C.F.R. 226.17.

The Official Commentary to the above-quoted regulations reiterates and reinforces this conclusion, stating as follows:

///
///

> 17(e) Effect of subsequent events.
>
> 1. *Events causing inaccuracies*. **Inaccuracies in disclosures are not violations if attributable to events occurring after the disclosures are made**.... **The creditor may, however, be required to make new disclosures** under § 226.17(f) or § 226.19 if the events occurred between disclosure and consummation....
>
> *17(f) Early disclosures.*
>
> 1. *Change in rate or other terms.* Redisclosure is required for changes that occur between the time disclosures are made and consummation if the annual percentage rate in the consummated transaction exceeds the limits prescribed in this section, even if the initial disclosures would be considered accurate under the tolerances in § 226.18(d) or 226.22(a). To illustrate:
>
>> i. *General*. A. If disclosures are made in a regular transaction on July 1, the transaction is consummated on July 15, and the annual percentage rate varies by more than 1/8 or 1 percentage point from the disclosed annual percentage rate, the creditor must either redisclose the changed terms **or furnish a complete set of new disclosures before consummation**....

12 C.F.R. Pt. 226, Supp. I (emphasis added). Here, new disclosures consistent with the loan actually taken by Plaintiff were properly delivered in connection with Plaintiffs' mortgage transaction. Given those disclosures, there was no TILA violation by Moving Defendants.

In addition to concluding that there is no TILA violation has been demonstrated, Plaintiff's First Cause of Action also fails on grounds that it is barred by the applicable statute of limitations in any event. Pursuant to 15 U.S.C. § 1640(e), a claim for damages under TILA must be commenced within one year following the date of the alleged violation. The date of the violation refers to the date "the loan documents were signed."

9

<u>Meyer v. Ameriquest Mortgage Co.</u>, 342 F.3d 899, 902 (9th Cir. 2003).  In this case, the Adjustable Rate Note and Deed of Trust were fully executed by both Plaintiffs as of January 25, 2007.  (<u>See</u> Exs. "A" and "E" to Pls.' Request for Judicial Notice).  Because the statute of limitations accordingly expired on January 25, 2008, before the present lawsuit was filed on May 16, 2008, Plaintiff's TILA claim would be time-barred even had Plaintiffs presented a viable TILA violation, which they have not.

Moreover, the status of Defendant Countrywide as a subsequent assignee of Plaintiffs' loan provides yet another reason why a TILA claim cannot be maintained.  As Plaintiffs admit in their Complaint, Countrywide neither funded or served as the original lender on their loan.  (Compl., ¶¶ 10, 12, 14).  As a subsequent assignee, Countrywide is liable only if a TILA violation is apparent on the face of the Disclosure Statement it received.  15 U.S.C. § 1641(e)(1).  As already discussed, the January 22, 2007 disclosure applicable to the loan assigned to Countrywide is consistent with the terms of that loan, with no material discrepancies present.  The alleged misrepresentations Plaintiffs do identify, namely, the differences between the January 2007 Disclosure and an earlier December 2006 Disclosure for a loan that never came to a fruition, as well as an e-mail generated some two months before the loan assumed by Countrywide was ever consummated, were not apparent on the face of the Disclosure Statement attendant to the loan assigned by Countrywide.

///

10

1  For all these reasons, there can be no cause of action here
2  for violation of TILA against Moving Defendants.[3]  The Motion to
3  Dismiss Plaintiffs' First Cause of Action will accordingly be
4  granted.

### B. HOEPA Violation

Plaintiffs' Second Cause of Action seeks damages under HOEPA, an amendment to TILA codified at 15 U.S.C. § 1639, for the alleged failure to provide additional disclosures required by HOEPA, which creates "a special class of regulated loans that are made at higher interest rates or with excessive costs and fees." In re Community Bank of Northern Va., 418 F.3d 277, 304 (3d Cir. 2005).  In order to be subject to the protections afforded by HOEPA, one of two factors has to be established.  Either the annual percentage rate of the loan at consummation must exceed by more than 10 percent the applicable yield on treasury securities, or the total points and fees payable by the consumer at or before closing has to be greater than 8 percent of the total loan amount, or $400.00.  15 U.S.C. § 1602(aa)(1) & (3); see also 12 C.F.R. § 226.32(a)(1).

///
///
///

---

[3] Although the Court's analysis above focuses on Defendant Countrywide's liability under TILA, Plaintiffs' Complaint contains no allegation suggesting that Defendant ReconTrust qualifies as either a creditor or assignee under TILA.  See 15 U.S.C. § 1602(f); § 1641.

11

1    Plaintiffs' claim that their loan violates HOEPA, because
2 the additional disclosures it requires were not made, fails.
3 Plaintiffs' Complaint does not demonstrate that the mortgage they
4 obtained qualified for protection under HOEPA in the first place,
5 and the loan documents proffered by Moving Defendants and
6 judicially noticed by this Court in fact shows it does not.  As
7 Plaintiffs concede, they claim entitlement to HOEPA only under
8 the second prong of potential HOEPA liability established where
9 points and fees are greater than 8 percent.  Pls.' Opp., 10:3-6,
10 citing Compl., ¶ 50.  Plaintiffs' Complaint, however, does not
11 allege any particular facts showing that the percentage threshold
12 for HOEPA protection was actually crossed in this case.  That
13 failure alone subjects the claim to dismissal.  See, e.g., Marks
14 v. Chicoine, 2007 WL 160992 at *8 (N.D. Cal. 2007) (court
15 dismissed claim for violation of HOEPA where plaintiff failed to
16 allege facts that would support a conclusion that HOEPA applied
17 to the loan at issue); see also Justice v. Countrywide Home
18 Loans, Inc., 2006 WL 141746 at *2 (E.D. Tenn. 2006) (where
19 complaint alleged that excessive fees were charged in violation
20 of HOEPA but failed to specify such fees, dismissal was
21 appropriate, since "the bare incantation of statutory terms,
22 without corresponding allegations to support recovery, does not
23 state a claim.").
24    Even more significantly, however, the loan documents
25 provided by Moving Defendants show that Plaintiffs cannot qualify
26 for HOEPA on the basis they claim.
27 ///
28 ///

12

In <u>In re Reagoso</u>, 2007 WL 1655376 at *4 (Bktcy. E.D. Pa. 2007), the court dismissed plaintiffs' HOEPA claims, noting both that no calculation of the allegedly excessive fees was provided in their complaint, and that by the court's own calculations the total of loan fees was less than the 8 percent needed to qualify under HOEPA.  Here, the January 22, 2007 Disclosure Statement shows a total loan amount, or amount financed, at $764,092.58.  The difference between that amount and the $790,000.00 principal on the Note is $25,907.42, which represents fees and points over and above the principal amount financed.  Dividing the total loan amount of $764,902.58 by the $25,907.42 in fees and points yields a percentage calculation of only 3.4 percent, less than the 8 percent threshold needed to qualify for the additional protections of HOEPA.

In addition to this substantive failure, like Plaintiffs' TILA claim, their allegations under HOEPA are time barred in any event under 15 U.S.C. § 1640(e).  Therefore the Motion to Dismiss will also be granted as to Plaintiffs' Second Cause of Action as well.

**C.  Rescission**

While Plaintiffs allege, for a Third Cause of Action, that they are entitled to rescission of their mortgage, under normal circumstances they had only three days to do so, as the regulations to TILA explain:

///
///

13

> "The consumer may exercise the right to rescind until midnight of the third business day following consummation, delivery of [the notice of the right to rescind], or delivery of all material disclosures, whichever occurs last. If the required notice or material disclosures are not delivered, the right to rescind shall expire 3 years after consummation, upon transfer of all the consumer's interest in the property, or upon sale of the property, whichever occurs first....."

12 C.F.R. § 226.23(a)(3). A loan is deemed consummated for purposes of TILA at "the time that a consumer becomes contractually obligated on a credit transaction." 12 C.F.R. § 226.2(a)(13). This occurred when the Adjustable Rate Note and Deed of Trust were executed in January of 2007. See In re McNinch, 250 B.R. at 858-59 (for purposes of calculating 3-day deadline for rescission under TILA, consummation of loan occurred at closing).

The Notices of Right to Cancel provided to both Plaintiffs comport with these requirements, and specifically indicate that rescission cannot be made after January 29, 2007 (see Exhibits "F" and "G" to Moving Defendants' Request for Judicial Notice). As indicated above, Plaintiffs can avoid this deadline only if they establish that the required disclosures were not made. Since the Court has already determined that the loan documents complied with both TILA and HOEPA, there is no basis for extending the right of rescission to three years as Plaintiffs claim. Plaintiffs' Third Cause of Action consequently also fails, since Plaintiffs' March 27, 2008 demand for rescission was far beyond the three-day deadline within which any right in that regard had to be exercised.

///

14

While Plaintiffs appear to argue that Moving Defendants wrongfully failed to respond to their valid request for rescission within twenty days as required by 15 U.S.C. § 1635(b), that requirement presupposes a valid right to rescission for which a timely reply was owed. No timely request to rescind was made here.

### D.  Injunctive Relief

Because Plaintiffs have failed to identify any cognizable violation of either TILA or HOEPA, there is no legal basis for injunctive relief as requested in Plaintiffs' Fourth Cause of Action. Plaintiffs concede that their claim for injunctive relief is entirely predicated on the alleged violations of TILA and HOEPA (Opp. 14:20-21), which the Court has found not to be present.

## CONCLUSION

For the reasons outlined above, Moving Defendants' Motion to Dismiss is GRANTED. Notwithstanding the fact that the Court does not believe that Plaintiffs will be able to rectify the deficiencies of Plaintiffs' Complaint as against the Moving Defendants through amendment, the Court will grant Plaintiffs ten (10) days leave to amend.

///
///
///
///
///

No further extensions to file an amended complaint will be granted. In the event plaintiffs fail to file an amended complaint within said (10) days, the Court will, without further notice, dismiss this action and close the file.

    IT IS SO ORDERED.

Dated: November 21, 2008

_____
MORRISON C. ENGLAND, JR.
UNITED STATES DISTRICT JUDGE